UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CORAL CHEMICAL COMPANY and DONALD LAFLAMME, | ) ) ) | |
| Plaintiffs, | ) ) | 4:16-cv-00023-RLY-DML |
| vs. | ) ) | |
| CHEMETALL US, INC., | ) ) | |
| Defendant. | ) | |

**ENTRY ON PENDING MOTIONS**

This diversity case arises out of breaches of non-competition and non-solicitation covenants in an employment agreement.  Plaintiffs, Donald LaFlamme and his new employer, Coral Chemical Company, filed this declaratory judgment action against LaFlamme's former employer, Chemetall US, Inc., to have the covenants declared unenforceable.  Less than a week after this action commenced, Chemetall filed a separate action for damages in the District of New Jersey, where it sought and obtained a temporary restraining order ("TRO") and a preliminary injunction enforcing the covenants against LaFlamme.  Plaintiffs now move for a preliminary injunction against Chemetall's continued prosecution of the New Jersey litigation; and Chemetall moves to dismiss or, in the alternative, to transfer venue to the District of New Jersey pursuant to a forum-selection clause.  Both motions require the court to determine whether this litigation belongs here or in New Jersey.  For reasons explained below, the court finds

that proper forum lies in New Jersey and therefore **GRANTS** Chemetall's motion to transfer and **DENIES** Plaintiffs' motion for injunctive relief.

## I.      Background

LaFlamme, an Indiana resident, began his employment with Chemetall in June 2010 as a Technical Sales Manager ("TSM") for the "South Central Region."  Chemetall, a Delaware corporation with its principal place of business in New Jersey, manufactures specialized chemical products and processes for use in a variety of industries.  To ensure that TSMs can understand and therefore explain proprietary technology to Chemetall's customers, Chemetall hires TSMs with backgrounds in engineering or chemistry.  As a safeguard for its proprietary information, Chemetall required LaFlamme to execute an "Agreement in Consideration of Employment" (the "Agreement") prior to his employment whereby he agreed not to compete, solicit, or disclose confidential information.  The covenant not to compete provides, in relevant part:

> In addition, [LaFlamme] agrees that, for the period of one (1) year from the date of termination of [his] employment . . . : (a) [LaFlamme] will not directly or indirectly . . . engage or participate in any employment or activity intended to or which does compete with Chemetall within any territory to which [LaFlamme] was assigned by Chemetall during the two (2) years prior to the termination . . . .

The covenant not to solicit provides as follows:

> [LaFlamme] shall not . . . for one (1) year following the termination of [his] employment . . . with Chemetall directly or indirectly . . . solicit, attempt to solicit, assist another to solicit customers of Chemetall, or in any other way, attempt to influence customers of Chemetall to alter or terminate their business relationships with Chemetall.

(Filing No. 1-1 ("Agreement") at 4–6).  The Agreement's choice of law and forum-selection clause provides for New Jersey law to govern and New Jersey as a forum. (Agreement at 7).

On January 12, 2016, LaFlamme resigned from his position at Chemetall but continued working there until Friday, January 29.  On the following Monday, February 1, LaFlamme began his sales position with Coral.  Coral, an Illinois corporation with its principal place of business in Illinois, manufactures industrial chemical products and directly competes with Chemetall in the area of surface treatments for metals.  On February 6, upon learning of LaFlamme's employment at Coral, Chemetall sent Plaintiffs a letter demanding written assurances that LaFlamme would honor his obligations under the Agreement and terminate his employment at Coral.  Plaintiffs did not respond to the letter and instead, on February 11, commenced this action to have the covenants declared unenforceable.

On February 16, Chemetall filed its complaint for damages and a motion for a TRO and a preliminary injunction in the District of New Jersey.  The New Jersey court granted the TRO and promptly set a preliminary injunction hearing for February 29. Prior to the hearing, Plaintiffs, citing the first-filed rule, petitioned this court to enjoin Chemetall from proceeding in the New Jersey action.  On February 25, the Magistrate Judge denied Plaintiffs' application for a TRO without prejudice, reasoning that Plaintiffs could advance their arguments regarding proper forum at the February 29 hearing in New Jersey.  The Magistrate Judge declined to address the request for a preliminary injunction and instead reserved ruling on the merits pending the decision of the New Jersey court.

In a thorough and well-reasoned opinion, the New Jersey court granted Chemetall's motion for a preliminary injunction, subject to certain limitations. *See Chemetall US Inc. v. LaFlamme*, No. 16-780, 2016 WL 885309, at *16–18 (D.N.J. Mar. 8, 2016). The court heard Plaintiffs' arguments in support of applying Indiana law, as well as arguments on the merits in opposition to Chemetall's motion for a preliminary injunction. As to the choice of law issue, the court acknowledged Indiana's interest in seeing that its residents enjoy the protections afforded by Indiana law. It concluded, however, that because New Jersey has that same compelling interest with respect to its residents, Indiana did not have a "materially greater interest" than New Jersey, and therefore the parties' choice of law governed. *Id.* at *7–8. As to the underlying merits, the court found that the covenants not to compete or solicit lacked sufficiently narrow scope to pass scrutiny under New Jersey law. Accordingly, the court issued a preliminary injunction subject to limitations as to the scope of the covenants. *See id.* at *10, 15.

Plaintiffs subsequently filed in this court a "Supplemental Memorandum" in support of its outstanding motion for a preliminary injunction. Plaintiffs primarily argue that Chemetall improperly filed a duplicative suit in another district when, instead, it should have moved to transfer this action to New Jersey. Chemetall filed a brief in opposition to Plaintiffs' motion and also filed its own motion to dismiss or transfer. Plaintiffs did not submit a brief in opposition to Chemetall's motion and apparently rely on arguments made in their briefs in support of a preliminary injunction. The court now turns to the parties' motions.

4

## II.     Discussion

The parties filed mirror image lawsuits in two different district courts, and each party claims to have chosen the proper forum.  Plaintiffs invoke the first-filed rule in support of their motion for a preliminary injunction, arguing that Chemetall improperly filed a duplicative lawsuit in New Jersey.  Chemetall moves to dismiss or transfer this matter on grounds that the Agreement contains a valid forum-selection clause.  Because both motions require the court to determine the enforceability of the forum-selection clause, as a practical matter, the court addresses Chemetall's motion first.

### A.     Motion to Dismiss

Chemetall first moves to dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  Section 1406(a) requires a district court to dismiss or transfer a case "laying venue in the wrong division or district."  In support of dismissal, Chemetall relies solely on the Agreement's forum-selection clause.  This argument fails to acknowledge *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, — U.S. —, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013), where the Supreme Court held that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)."  134 S. Ct. at 579.  The Court made clear that a party may invoke a forum-selection clause through a motion to transfer under 28 U.S.C.

§ 1404(a). *Id.* Thus, the court denies Chemetall's motion to dismiss this action for improper venue.[1]

### B.  Motion to Transfer

In the alternative, Chemetall moves to enforce the forum-selection clause through a motion to transfer under § 1404(a). *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (holding that even in diversity cases, federal law governs decision whether to give effect to forum-selection clause). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division to which all parties have consented." The calculus changes, however, when a party seeks to invoke or oppose a valid forum-selection clause. *Atl. Marine Constr. Co.*, 134 S. Ct. at 581. A forum-selection clause waives a party's right to assert his or her own inconvenience as a reason to transfer, leaving the court to consider only public-interest factors. *Id.* at 582; *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Because the parties dispute the enforceability of the forum-selection clause, the court must resolve this threshold issue.[2]

---

[1]     Chemetall's reliance on pre-*Atlantic Marine* case law merits no further discussion.

[2]     The parties do not dispute that the scope of the forum-selection clause encompasses the underlying controversy regarding the covenants.

### 1.   Forum-Selection Clause

### a.   Choice of law

Before turning to enforceability—that is, whether the forum-selection clause factors into the § 1404(a) analysis—the court must determine what law governs the inquiry.  Generally, a district court sitting in diversity applies the choice of law rules of the state in which it sits.  *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014).  When evaluating a forum-selection clause in a contract that also contains a choice of law provision, the court applies the law of the jurisdiction that the parties chose to govern the rest of the contract.  *Id.* at 774–75 (affirming the rule of the Seventh Circuit as set forth in *Abbott Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421, 423 (7th Cir. 2007)).

Applying *Abbott Laboratories*, the court looks to the law of New Jersey to assess the forum selection clause.  New Jersey courts follow the federal standard and thus consider a forum-selection clause presumptively valid unless the resisting party demonstrates its unreasonableness under the circumstances.  *Paradise Enters. Ltd. v. Sapir*, 811 A.2d 516, 520–21 (N.J. Super. Ct. App. Div. 2002) (relying on *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), as accepted with approval in *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 624–25 (N.J. 1996)).  Courts will decline to enforce a forum-selection clause only if (1) it is a result of fraud or overweening bargaining power; (2) enforcement would violate a strong public policy of the local forum; or (3) enforcement would be seriously inconvenient for the trial.  *Id.* at 521; *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160

(7th Cir. 1993) (articulating the *Bremen* rule).  The party resisting enforcement has the burden of establishing that an exception applies.  *Id.*

### b.     The *Bremen* rule

Plaintiffs argue that enforcement of the forum-selection clause would violate Indiana's strong public policy against unreasonable restrictive covenants.  The argument proceeds as follows: Plaintiffs would prevail if permitted to proceed in this court because an Indiana court, applying Indiana's choice of law rule, would not enforce the covenants.  However, if the court enforces the forum-selection clause and the case proceeds in New Jersey, the New Jersey court will enforce (as it has already) the covenants subject to court-imposed limitations, or "blue penciling."  Thus, because enforcement of the forum-selection clause would yield a result in New Jersey that contravenes the public policy of Indiana, the clause itself offends Indiana's public policy.  (*See* Filing No. 25 ("Pls.' Suppl. Br.") 18–20).  This argument, as explained below, incorrectly merges Indiana's choice of law analysis into a forum-selection analysis.

Relying on *Dearborn v. Everett J. Prescott, Inc.*, 486 F. Supp. 2d 802 (S.D. Ind. 2007) and similar cases, Plaintiffs correctly observe that Indiana courts will not enforce contract provisions that violate Indiana's strong public policy against overly broad restraints on trade.  In *Dearborn*, the defendant employer sought a preliminary injunction against the plaintiff, a former sales representative for the defendant, to prevent him from working for a competitor in breach of a broadly written non-competition covenant.  486 F. Supp. 2d at 804.  The employment contract called for Maine law to govern.  This court, sitting in diversity, declined to enforce the choice of law provision because to do so

8

would contravene Indiana's public policy, and because Indiana had a materially greater interest in the litigation than Maine.  *Id.* at 818–19 (relying on Indiana's choice of law rule which is consistent with Restatement (Second) of Conflicts of Law § 187 (1971)).  The court noted Indiana's requirement that non-competition covenants "be sufficiently specific in scope to allow the employee a clear understanding of what conduct is prohibited."  *Id.* at 815 (citing Indiana cases) (internal quotation marks omitted).  When employers write overly broad covenants that have intimidating, *in terrorem* effects on employees, Indiana courts exact the heavy price of giving the covenants no effect.  *Id.*  Unless a covenant has clearly divisible parts such that a court may sever the unreasonable portions, a court will not step in to save it.  *Id.* at 809–10 (citing *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983)); *see also Zimmer, Inc. v. Sharpe*, 651 F. Supp. 2d 840, 851 (N.D. Ind. 2009).

The *Dearborn* court found that courts in Maine employed a very different approach.  Although Maine law similarly views non-competition covenants as contrary to public policy, the court observed that courts in Maine look not to the covenant as drafted and contemplated by the parties but to the scope of the covenant as the employer seeks to enforce it.  *Id.* at 810 (citing *Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995)).  As the court noted, such a policy permits an employer to retreat from its overly broad language to save the covenant once the employee challenges it.  *Id.* at 811.  The *Dearborn* court viewed this approach as incompatible with Indiana's public policy because it would rob the employee of any certainty as to the specific terms that bind him.  *Id.* at 816.

9

Concluding that an Indiana court would resolve the conflict of law in favor of Indiana, the court declined to enforce the choice of law provision. *Id.* at 819.

Had Chemetall waived the forum-selection clause and opted to pursue its preliminary injunction in this court, *Dearborn* and similar cases cited might have proved instructive. The court would have determined whether the application of New Jersey law offends Indiana's public policy and, if so, whether Indiana has a greater material interest in this litigation. *See South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F. Supp. 209, 212 (N.D. Ind. 1983) (applying Restatement (Second) of Conflicts of Law § 187 (1971)); *see also Dearborn*, 486 F. Supp. 2d at 812–13 (same). This case, however, does not present the court with the same concerns at issue in *Dearborn*. In *Dearborn*, the court's enforcement of the parties' choice of law in deciding the merits would have given effect to sweeping, anti-competitive covenants. In other words, an Indiana court would have denied an Indiana resident, properly before the court, the protection of Indiana law against unreasonable covenants. *See Dearborn*, 486 F. Supp. 2d at 815–16 (explaining Indiana's interest in protecting employees from unreasonable covenants). Here, the issue is not the choice of law to apply to the merits of the case but whether the court should give effect to the parties' contractually chosen forum.

Plaintiffs do not argue that the forum-selection clause violates Indiana's public policy against unreasonable covenants. Rather, they contend that the ultimate effect of enforcement—as illustrated in the New Jersey court's decision—runs contrary to Indiana law. The court need not make this determination, for unless the forum-selection clause itself violates a public policy of the forum state, the court will find it enforceable. *See*

10

*Zimmer, Inc. v. Sharpe*, 3:09-cv-117, 2009 WL 1424199, at *4–5 (N.D. Ind. May 15, 2009) (distinguishing between policy considerations related to enforcement of covenants and those relevant to forum-selection clauses); *Wilkinson Co. v. Krups N. Am., Inc.*, 48 F. Supp. 2d 816, 818–19 (N.D. Ill. 1999) (rejecting argument that anti-waiver provision of state statute rendered forum-selection clause unenforceable as against Illinois public policy); *cf. E&J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 977–78 (N.D. Ill. 2002) (finding forum-selection clause designating California unenforceable because Illinois public policy expressly requires venue to lay in Illinois when disputes arise under a certain statutory framework).

On this point, Chemetall directs the court to *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101 (S.D. Cal. 2006).  In that case, a California resident and former employee of the defendant sought to defeat her non-competition covenants in a California court despite a forum-selection clause in favor of Washington.  *Swenson*, 415 F. Supp. 2d at 1102–03.  Hoping to benefit from California's prohibition on non-competition covenants in employment contracts, the employee invoked the *Bremen* rule.  She argued that enforcement of the forum-selection clause contravened California's strong public policy because Washington law permits reasonable covenants not to compete.  *Id.* at 1104.  The court rejected this argument, explaining that although California law prohibits such covenants, "[e]nforcement of the forum selection clause itself here does not contravene a strong public policy of California."  *Id.*  Similar to the present case, the employer in *Swenson* obtained injunctive relief in a parallel action filed in the parties' chosen forum—Washington.  *Id.* at 1103.  The California court noted that enforcement of

11

Case 2:16-cv-03865-CCC-MF   Document 34   Filed 06/28/16   Page 12 of 21 PageID: 926


the clause did not deprive the employee of a fair forum in which to advocate for the application of California law.  *Id.* at 1104.  The court explained that although the Washington court arrived at a different conclusion vis-à-vis restrictive covenants than had a California court decided the issue, this fact did not render the forum-selection clause void as against public policy.  *Id.* at 1104–05.

The reasoning in *Swenson* comports with other cases where parties invoke public policy to avoid litigating in a contractually chosen forum.  In *Bonny*, the Seventh Circuit considered whether forum-selection and choice of law clauses designating English law and English courts operated to subvert a U.S. policy of protecting investors through its securities laws.  3 F.3d at 160–61.  Although the court expressed concern that the clauses appeared to prospectively waive statutory remedies for securities violations, it concluded that the legal remedies under English law, although different, may nonetheless vindicate investors' rights without subverting the American policy.  *Id.*  In *Wilkinson Co.*, the party resisting the forum-selection clause argued that the anti-waiver provision of an Illinois statute designed to protect sales representatives applied to agreements on venue.  48 F. Supp. 2d at 819.  The court disagreed, reasoning that the public policy announced by statute concerns the substantive, non-waivable protections Illinois affords to sales representatives, not the parties' choice of venue.  *Id.*  The court explained that the plaintiff could freely litigate his claims in the parties' chosen forum.  *Id.*; *see also Wors v. Sling Med., Inc.*, No. 10-cv-0106, 2010 WL 1963201, at *2–3 (S.D. Ill. May 14, 2010).  In both cases, as in *Swenson*, the courts expressed satisfaction with forum-selection clauses so long as they did not deprive the resisting parties of their day in court.

12

The court finds that honoring the parties' choice of forum in New Jersey does not contravene a strong public policy of Indiana.  In Indiana, courts enforce forum-selection clauses so long as (1) they are reasonable and just under the circumstances, (2) there is no evidence of fraud or overreaching such that enforcement would deprive a resisting party of a day in court, and (3) they are freely negotiated.  *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1022 (Ind. Ct. App. 2007).  Plaintiffs fail to show that an Indiana court would disregard the parties' freely negotiated choice of forum because courts in New Jersey, applying New Jersey law, decide an issue differently.  Furthermore, as the *Swenson* court explained, Plaintiffs' argument would render "forum selection clauses . . . largely meaningless as [enforceability] would depend on who filed first and whether that forum's law was more favorable to them."  415 F. Supp. 2d at 1105.

Plaintiffs do not allege fraud or extreme inconvenience as grounds for finding the clause unreasonable under the *Bremen* rule.  Accordingly, the court finds the forum-selection clause enforceable.

### c.    Contract formation

Plaintiffs also challenge the contractual validity of the forum-selection clause.  Relying on *PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP*, No. 14-4150, 2015 WL 1399199 (D.N.J. Mar. 24, 2015), Plaintiffs argue that because "[Chemetall] is not a signatory to the Agreement and is not bound by any of [its] terms . . . , the forum selection clause is invalid."  (Filing No. 32 at 10–11).  Plaintiffs misread *PNY Technologies*.  In that case, the court considered whether a *third-party* non-signatory may invoke a contract's forum-selection clause against a signatory.  2015 WL 1399199, at *6–

13

8.  The court found that because the third-party non-signatory had a close connection to the contractual relationship such that the signatories could foresee its invocation of the forum-selection clause, the non-signatory could enforce the clause.  *Id.*; *accord Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012) (citing rule that a nonparty to contract may invoke the forum-selection clause if the nonparty is closely related to the suit).  Plaintiffs do not suggest—nor should they—that Chemetall has no connection to the Agreement or that its invocation of the forum-selection clause was not foreseeable.  Without Chemetall, no agreement exists.

Rather, Plaintiffs assert that the absence of affirmative "duties or obligations" imposed on Chemetall precludes it from benefitting from the forum-selection clause.  (Filing No. 32 at 11–12).  This apparent attack on the contract's formation presupposes that Chemetall's employment of LaFlamme did not suffice as consideration.  In New Jersey, continued employment constitutes consideration to support certain employment agreements, including reasonable restrictive covenants.[3]  *See, e.g.*, *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 878–79 (N.J. 2002); *Hogan v. Bergen Brunswig Corp.*, 378 A.2d 1164, 1167 (N.J. Super. Ct. App. Div. 1997) (finding continued employment constitutes consideration to support a post-employment restrictive covenant).  Satisfaction of the

---

[3]      As discussed above, Plaintiffs confine their argument concerning the unreasonableness of the covenants to Indiana law and appear to concede that New Jersey courts will enforce them, subject to limitations to overly broad geographical scopes, duration, or scope of restricted activity.  *See, e.g.*, *Coskey's Television & Radio Sales & Serv. Inc. v. Foti*, 602 A.2d 789, 793 (N.J. Super. Ct. App. Div. 1992) (citing *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 60–61 (N.J. 1970)); *see also Chemetall US Inc.*, 2016 WL 885309, at *12 (finding covenants too broad in scope and, for purposes of preliminary injunction, narrowing the scope to make them reasonable).

consideration requirement obviates the need to show additional "gain or benefit to the promisor, loss or detriment to the promise, equivalence in the values exchanged, or mutuality of obligation."  *Martindale*, 800 A.2d at 897 (quoting Restatement (Second) of Contracts § 79 (1981)) (citation omitted).  The parties do not dispute that LaFlamme executed the Agreement prior to and in consideration of his employment, or that LaFlamme benefitted from several years of employment with Chemetall.  And Plaintiffs do not develop the argument beyond their misplaced reliance on *PNY Technologies*.  The court, therefore, finds no defect in the formation of the Agreement or the contractual validity of the forum-selection clause.

### d.     Mandatory language in the forum-selection clause

Lastly, Plaintiffs argue that the forum-selection clause's permissive, rather than mandatory, language makes it unenforceable against LaFlamme.  Although New Jersey case law lacks much guidance on this issue of contract interpretation, in one unpublished opinion the Appellate Division of the Superior Court of New Jersey approved of the lower court's reliance on *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51 (2d Cir. 1994).  *See First Tek Techs., Inc. v. PAC Corp.*, 2010 WL 773197, at *1 (N.J. Super. Ct. App. Div. Mar. 9, 2010) (unpublished opinion).  In *John Boutari & Son*, the court observed the general rule that a court will enforce a forum-selection clause if it employs "mandatory venue language."  22 F.3d at 53; *accord IMS Health Info. Sols. USA v. Lempernesse*, No. 15-7561, 2016 WL 236214, at *7 (D.N.J. Jan. 19, 2016) (citing rule in Third Circuit that although a forum-selection clause need not use words like "exclusive" or "sole," the plain language must "unambiguously state[ ]

the parties' intentions to make jurisdiction exclusive" (internal quotation marks excluded)). The contract at issue in that case provided that "[a]ny dispute arising between the parties . . . shall come within the jurisdiction of the competent Greek Courts . . . ." *Id.* at 52. The court concluded that the term "shall" referred not to the exclusivity of venue in Greece's courts but to the fact that Greek courts had jurisdiction. *Id.* at 53. In other words, the language did not preclude a party to the contract from properly litigating in a non-Greek forum.

Plaintiffs rely on a similar case, *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866 (S.D. Ind. 2014), for the proposition that the term "shall" does not suffice to make a forum-selection clause mandatory. The clause at issue in *Heckler & Koch* provided that the court "shall retain jurisdiction to enforce this Agreement." *Id.* at 899. The court considered this language permissive and declined to find a breach of the contract term. *Id.* at 900.

In the present case, however, the Agreement's forum-selection clause employs the following language:

> [LaFlamme] consents and agrees that *any and all litigation* between [him] and Chemetall relating to this Agreement *shall* take place in the State of New Jersey and [LaFlamme] expressly consents to the jurisdiction of the federal and/or state courts in New Jersey.

(Agreement at 7 (emphasis added)). Unlike the language at issue in *John Boutari & Son* and *Heckler & Koch*, the language here provides for exclusive *venue* in New Jersey. Providing that "any and all litigation" must occur in New Jersey precludes the possibility

16

of venue in any other forum.  Accordingly, the court finds the Agreement's forum-selection clause is mandatory and therefore enforceable.

### 2. Section 1404(a)

Having found the forum-selection clause valid and enforceable, the court must proceed with the transfer analysis prescribed in *Atlantic Marine*.  The *Atlantic Marine* Court explained that a valid forum-selection clause changes the traditional § 1404(a) analysis in three ways.[4]  134 S. Ct. at 581–82.  First, the party resisting the forum-selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* at 582.  Second, the private-interest factors should not enter the court's calculus because the parties' prior agreement to choice of forum waives their right to challenge that forum as inconvenient.  *Id.*  Third, the party resisting transfer to the contractually chosen forum shall not benefit from the law of the transferor venue.  *Id.* at 582–83 (explaining that the exception to the *Klaxon* rule, articulated in *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964), would encourage forum shopping to obtain favorable choice of law).

Applying the *Atlantic Marine* framework, the court only considers the public-interest factors relevant to a § 1404(a) analysis.  Public-interest factors include "(1) the court's familiarity with the applicable law, (2) the efficiency with which the court may

---

[4]       Ordinarily, when evaluating a motion to transfer under § 1404(a), courts look to public and private factors.  In the context of a forum-selection clause, *Atlantic Marine* instructs the court not to consider private-interest factors.  These factors include (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.  *See, e.g.*, *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006).

resolve the matter, (3) and the desirability of resolving disputes in the region in which they arose." *First Nat'l Bank*, 447 F. Supp. 2d at 912.  "Because [these] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 134 S. Ct. at 582.

The court finds that the public-interest considerations favor transfer to New Jersey. As explained above, the law of New Jersey governs this dispute.  Thus, a federal district court in New Jersey has the considerable advantage of familiarity with the applicable law. The parties have not provided the court reason to think either forum would decide this matter more expeditiously than the other.  And although Indiana has an interest in this litigation, that interest does not outweigh New Jersey's compelling interest in seeing that a New Jersey court interprets a contract formed in New Jersey and subject to its laws. *See Chemetall*, 2016 WL 885309, at *8 (explaining New Jersey's interest in this matter). Indeed, in deciding whether New Jersey had a greater material interest in the New Jersey action, the *Chemetall* court observed that "New Jersey has an interest in enforcing its company's rights, in enforcing covenants that are reasonably designed to protect the legitimate interest of its residents, and in protecting the confidential information of its residents." *Id.*  This court agrees.  Accordingly, Chemetall's motion to transfer is granted.

### C.      The first-filed rule

Although the court grants transfer pursuant to § 1404(a), Plaintiffs' considerable reliance on the first-filed rule to support their motion for a preliminary injunction merits brief discussion.[5]

Ordinarily, a party seeking a preliminary injunction must show that it has a reasonable likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm absent the injunction.  *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).  However, when considering the merits of the sort of injunction sought here—enjoining the prosecution of a parallel lawsuit rather than an activity related to the underlying controversy—the court looks to the application of the first-filed rule.  *See, e.g.*, *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010) (clarifying the application of the first-filed rule in context of a motion for injunctive relief and a cross motion to transfer); *see also Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993) (noting that a preliminary injunction of this sort calls for a factual inquiry into whether circumstances warrant a departure from the first-filed presumption).

---

[5]      When denying a motion for injunctive relief, the court typically must make findings of fact and conclusions of law.  Fed. R. Civ. P. 52(a)(2); *Khan v. Fatima*, 680 F.3d 781, 785 (7th Cir. 2012).  In this case, however, Plaintiffs sought to enjoin Chemetall's prosecution of the New Jersey action on grounds that Chemetall improperly filed a separate lawsuit and instead should have moved for transfer pursuant to *Atlantic Marine*.  Although the court does not read *Atlantic Marine* to prohibit a second-filed lawsuit in another forum, the court's grant of Chemetall's subsequent motion to transfer moots Plaintiffs' motion for a preliminary injunction.  Therefore, the court does not make separate findings of fact or conclusions of law in this Entry.

In this case, Plaintiffs rely on *Atlantic Marine* and the first-filed rule to support an injunction against Chemetall's prosecution of the New Jersey action.  According to Plaintiffs, their first-filed action in this court limited Chemetall to seeking transfer of this action to New Jersey.  The court disagrees.  The Seventh Circuit does not strictly adhere to the presumption favoring a first-filed action.  *See Research Automation, Inc.*, 626 F.3d at 980 ("This court has never laid down an inflexible rule that the prior filing controls." (internal quotation marks omitted)).  In *Research Automation*, the court affirmed that when "parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief, we ordinarily give priority to the coercive action, regardless of which case was filed first."  *Id.*  Here, Plaintiffs sought a declaratory judgment finding the covenants unenforceable against LaFlamme.  Five days later, Chemetall filed an identical action for damages in New Jersey.  On these facts alone, and without making a finding as to whether Plaintiffs filed this action in anticipation of litigation, the court finds that the first-filed presumption does not apply.  Furthermore, even if the court considered the parties' order of filing, it would factor into the transfer analysis under § 1404(a).  *Id.* at 982.  As the court concluded above, a private-interest factor such as the plaintiff's choice of forum does not enter the analysis when a valid forum-selection clause applies.

20

### III.    Conclusion

For the foregoing reasons, the court **GRANTS** Chemetall's alternative motion to transfer (Filing No. 29) and **DENIES** Plaintiffs' motion for a preliminary injunction (Filing No. 14).  The court hereby directs the Clerk of Court to **TRANSFER** this matter to the United States District Court for the District of New Jersey.

**SO ORDERED** this 28th day of June 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.